UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID R., | ) |
| Plaintiff, | ) No. 20-cv696 |
| v. | ) Magistrate Judge Susan E. Cox |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff David R.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits. The parties have filed cross-motions for summary judgment. As discussed below, the Court remands this matter for further proceedings consistent with this opinion. Plaintiff's Motion for Summary Judgment [dkt. 24] is granted as stated herein. The Commissioner's Motion for Summary Judgment [dkt. 27] is denied.

**I.      STANDARD OF REVIEW**

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. A "disabled" individual is one who "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which…has lasted or can be expected to last for a continuous period of no less than twelve months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). To qualify as disabled, a person's impairments must be so severe, that he is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful

---

[1]    In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his name(s).

1

work which exist in the national economy." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(B).

ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether he is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities he is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act, 20 C.F.R. §§ 404.1520(a) and 416.920(a), if it is supported by substantial evidence, and if it is free of legal error. 42 U.S.C. § 405(g). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Although we review the ALJ's decision deferentially, he must nevertheless build a "logical bridge" between the evidence and his conclusion. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

## II. FACTUAL BACKGROUND

### A. Procedural History

Plaintiff protectively filed an application for disability insurance benefits ("DIB") on February 16, 2017, with an alleged onset date of disability of January 27, 2017. [Administrative Record ("R.") 22.] Plaintiff's applications were denied initially and upon reconsideration. *Id.* On December 7, 2018, after an administrative hearing, Administrative Law Judge ("ALJ") Lee Lewin issued an unfavorable decision. [R. 22-30.] Plaintiff requested Appeals Council review, which was denied on December 2, 2019 [R. 1-7], causing the ALJ's December 7, 2018 decision to constitute the final decision of the Commissioner. 20 C.F.R. §404.981. Plaintiff filed the instant action on January 30, 2020, seeking review of the Commissioner's decision. [Dkt. 1.]

### B. Plaintiff's Background and Medical History

Plaintiff was born in 1963, and was nearly 54 years old at the time of his alleged onset date. [R. 109.]

On March 16, 2016, Dr. David Norbeck, Jr., M.D., an orthopedist at Lake County Orthopedics, reviewed with Plaintiff X-rays of his knees and an MRI of his back. [R. 336-339.] Those diagnostic tests revealed bilateral mild loss of medial joint space and degenerative disc disease at the L4-5 and L5-S1 with endplate signals as well as desiccative changes of intervertebral disc facet hypertrophic changes and mild ligamentum thickening, mild neuroforaminal narrowing, and mild concentric canal narrowing. *Id.*

On May 18, 2017, Plaintiff presented to Dr. Todd Giese, an internal medicine specialist at the Caring Family SC facility, with a disc bulge at L5-L5, tenderness in the lumbar area, and some difficulty with changing positions. [R. 379-80.] At that time, Dr. Giese noted Plaintiff "[a]lso would like a wheelchair for his home because it ties (stet) especially in the morning when he has trouble getting up it's really hard to get around." [R. 379.]

3

On June 2, 2017, Plaintiff underwent a psychological consultation with licensed clinical psychologist, Dr. Kenneth Heinrichs, Psy. D. [R. 354-55.] Dr. Heinrichs diagnosed Plaintiff with moderate recurrent major depressive disorder; adjustment disorder with anxiety; degenerative disc disease; chronic lower back pain; and arthritis of the left knee. [R. 355.]

On June 5, 2017, Plaintiff participated in a consultative examination with Dr. Jorge Aliaga. Dr. Aliaga diagnosed Plaintiff with degenerative disc disease; found that although Plaintiff did not use an assistive device for walking, he needed the support of the walls or furniture to ambulate; and produced positive bilateral straight leg raises with an antalgic posture and mild spasticity of the lumbosacral muscles as well as slow and conscious gait. [R. 359.]

On June 29, 2917, Dr. Norbeck reviewed Plaintiff's lumbar MRI scan with him, and diagnosed him with "significant degenerative disc disease at the L4 and L5." [R. 373-374.]

On November 27, 2017, Dr. Giese noted continuing tenderness in Plaintiff's lumbar area; and some weakness on the left side of the body. [R. 386.] Dr. Giese also recorded Plaintiff's complaints of depression, memory problems, fatigue, concentration issues, and restlessness. [R. 385.] On this same date, Dr. Giese authored a Physical Residual Function Capacity Statement. [R. 391-94.] Among other things, Dr. Giese opined that Plaintiff had a moderately poor prognosis and listed Plaintiff's symptoms as "if bad spasm (weekly – lasts 2-3 days) can't walk, barely gets out of bed." [R. 391.] Dr. Giese opined that Plaintiff can sit for 30 minutes at a time before needing to change position, can stand for 30 minutes at a time before needing to change position, and can walk for 30 minutes at a time before needing to change position. [R. 392.] He also opined that Plaintiff could only sit for about 2 hours in an 8-hour workday, and only stand for about 2 hours in an 8-hour workday, and that Plaintiff's legs would need to be elevated for 2 hours in an 8-hour workday. [R. 392-93.] Dr. Giese opined Plaintiff would be off-task at least 30% of the workday and absent more than five days per month. [R. 394.]

In January 2018, Dr. Norbeck noted that Plaintiff felt a course of L4-5 facet injections "did

4

not give him any good relief." [R. 369.] Dr. Norbeck therefore recommended facet injections at L5-S1. [R. 370.] Dr. Norbeck also noted Plaintiff's complaints of bilateral knee pain made worse with stairs. [R. 369.]

Finally, on March 18, 2019, approximately 3 months after the ALJ issued his decision in this matter, Dr. Bobby Edo of Advocate Medical group prescribed Plaintiff "one power wheel chair for lumbar (unreadable) and osteoarthritis of knees." [R. 48.] This additional evidence, however, was not considered by the ALJ, and when submitted to the Appeals Council, the Council denied Plaintiff's request for review, noting that "[t]his evidence does not relate to the period at issue." [R. 2.]

### C. The ALJ's Decision

On December 7, 2018, the ALJ issued a written decision denying the Plaintiff's DIB application. [R. 22-30.] At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 27, 2017. [R. 24.] At Step 2, the ALJ found that Plaintiff had the severe impairment of degenerative disc disease of the lumbar spine. *Id.* The ALJ determined that Plaintiff's depression (adjustment disorder with anxiety) was a non-severe impairment. [R. 25.] At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 26.] Before Step 4, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: no climbing of ladders, ropes, or scaffolds; only occasional climbing of ramps and stairs; only occasional stooping, kneeling, crouching, crawling, or balancing; no concentrated exposure to wetness, vibrations, or wet, slippery surfaces. [R. 26.] At Step 4, the ALJ found Plaintiff capable of performing his past relevant work as a social services caseworker and real estate appraiser, alleviating the need for the ALJ to make a Step 5 decision. [R. 29-30.] Finally, the ALJ found Plaintiff not disabled under the Act. *Id.*

**III.     DISCUSSION**

Plaintiff seeks judicial review alleging, among other things, that the ALJ improperly discounted the opinion of Plaintiff's treating physician, Dr. Todd Giese, M.D., under the treating physician rule. The Court agrees.

Because of a treating physician's greater familiarity with a claimant's condition and the progression of his impairments, a treating physician's medical opinion, it is "entitled to controlling weight if it is well supported by objective medical evidence and consistent with other substantial evidence in the record." 20 C.F.R. § 404.1527(d)(2); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (reference omitted).[2] On the other hand, while an "administrative law judge is not required to give a treating physician's opinion controlling weight, he is required to provide a sound explanation for his decision to reject it and instead to adopt another doctor's view." *Id; Campbell v. Astrue,* 627 F.3d 299 (7th Cir. 2010) (internal quotations omitted); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ does not need to rely on the treating physician's testimony, so long as the ALJ has given "good reasons" for not doing so. *Scott*, 647 F.3d at 739. Should the ALJ decide for "good reasons" not to give controlling weight to an opinion, the ALJ must evaluate what weight to assign to it in accordance with the following factors: (1) the length of treatment; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's degree of specialization; and (6) other factors supporting or contradicting the opinion. 20 C.F.R. § 404.1527(c); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). In his decision, the ALJ must "make[] clear that he was aware of and considered" the aforementioned factors. *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

Here, the ALJ discounted the medical source opinions of Dr. Giese for two reasons: (1)

---

[2] This rule, commonly known as the "treating physician rule," has been eliminated for claims filed on or after March 27, 2017. *Compare* 20 C.F.R. 404.614 (for claims filed before March 27, 2017) *with* 20 C.F.R. 404.1520c (for claims filed on or after March 27, 2017). For the purposes of this appeal, however, the prior version of the regulation applies.

6

because these opinions were not corroborated by office notes and objective findings; and (2) because Dr. Giese relied quite heavily on Plaintiff's subjective reports. [R. 29.]

As to the first reason for discounting Dr. Giese's opinions, the ALJ gave Dr. Giese's opinions little weight because "his opinions are not supported by his own treatment notes or orthopedic notes showing that [Plaintiff's] gait, strength, and sensory examinations were within normal limits." *Id.* However, the ALJ failed to point to any allegedly contradictory medical exhibit(s), or any specific pages from the Administrative Record. Courts will uphold an ALJ's determination not to give controlling weight to a treating source's medical opinion when that determination is based on a thorough consideration of all relevant medical evidence of record and where the ALJ identifies and explains the sufficiency of any inconsistent or contradictory medical evidence on which the ALJ relies in rejecting the treating source's opinion. *See Boiles v. Barnhart*, 395 F.3d 421, 426-27 (7th Cir.2005) (remanding where ALJ's rejection of treating physician's opinion "did not explain how other evidence in the record contradicted [treating source's] opinion"); *Johansen v. Barnhart*, 314 F.3d 283, 287-88 (7th Cir.2002) (ALJ's refusal to give controlling weight was proper where ALJ properly identified inconsistent medical evidence and adequately discussed reasons for relying on the inconsistent evidence).

On the other hand, Plaintiff has provided multiple citations tending to support Dr. Giese's opinions concerning Plaintiff's limitations (in part suggesting that perhaps the ALJ was indeed too quick to dismiss the opinions within Dr. Giese's November 2017 medical source statement). For example, Plaintiff details how May 18, 2017 treatment notes show Plaintiff presented to Dr. Giese with a disc bulge at L5-L5, tenderness in the lumbar area, some difficulty with changing positions, and requested a wheel-chair for continued back pain and ambulation problems [R. 379, 391-392]; On November 27, 2017, Dr. Giese noted more tenderness in the lumbar area, as well as depression including memory problems, fatigue, concentration issues and restlessness as well as weakness on the

7

left side of the body [R. 386]; the fact Plaintiff was diagnosed with limited sustained concentration and major depressive disorder with moderate symptoms is consistent with Dr. Giese's opinion that pain and stress would deter from Plaintiff's ability to work [R. 355]; and there is evidence of objective impairments in balance, pace, and movement, such as in ability to balance on either leg [R. 355, 359, 360]. Despite this, the ALJ's conclusion was unsupported by any explanation or reference to the medical record regarding what treatment records or opinions of other examiners did not support Dr. Giese's opinions. Thus, the Court is left wondering which aspect of the record is inconsistent with Dr. Giese's treatment notes or other medical records.

As to the second reason for giving little weight to the opinions of Dr. Giese, here the ALJ explains a little more about the subjective evidence he relied on in rejecting Dr. Giese's opinion. Specifically, the ALJ writes:

> Dr. Giese apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of that the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. For example, the medical expert pointed out that the record did not support most of the limitations set forth by Dr. Giese, including the 2-hour standing limitations and lifting and carrying five pounds Moreover, the restriction that the claimant needed to elevate his legs was not supported by the record.

[R. 29.]

Although the ALJ once again provides no citation in support of this holding, it is plain the ALJ was referencing Plaintiff's Administrative Hearing testimony on this point:

> Q: Okay. And you said – did you see Dr. [Giese in] November, 2017? He gave us some functional limitations?
> A: Yes.
> Q: And how did he come to those functional limitations? Did he do any testing, or did you tell him what the problems were?
> A: He did his own physical in the office testing, and he looked at my medical records from Lake Cook.
> Q: What kind of testing did he do on you?
> A: He had me lay on – in his office on the bed, and he lifted my legs and arms.
> Q: Okay. And in terms of needing breaks every 15 minutes, every hour, if that what you told him?

8

> A: Yes.
> Q: And in terms of being able to sit two hours, is that what you told him?
> A: Yes.
> Q: And standing two?
> A: Yes.
> Q: And did you also tell him that you could occasionally lift and carry less than five pounds?
> A: Yes.
> Q: He didn't have you lift and carry anything –
> A: No.
> Q: – is that correct? And did you tell him that you couldn't climb ladders?
> A: Yes, I did.
> Q: Okay. And did you also tell him that you couldn't climb stairs?
> A: Yes.
> Q: He didn't test you on any of that obviously –
> A: No, he didn't.
> Q: – is that correct? Did he ask how long you might – how many times you might miss work?
> A: He did ask me that.
> Q: And what did you tell him?
> A: Depends on the pain.
> Q: Okay. And did you – did he ask you how much time you might be off of work at work, miss work when you're there?
> A: He didn't get into that, no.

[R. 79-80.] As this mirrors the limits in Dr. Giese's medical source statement, it is almost as if Plaintiff had dictated his own limits to Dr. Giese and, thus, it is understandable the ALJ questioned the reliability of Dr. Giese's opinions seemingly copied directly from Plaintiff's self-reported, subjective limitations. However, even if a treating physician drafted a limitations statement fully adopting a patient's subjective limitations, this does not relieve the ALJ of the burden of detailing if or how that statement is unsupported by the record. The ALJ also referenced the fact the ME thought "the record did not support most of the limitations set forth by Dr. Giese," but this statement again suffers from the same flaw where the ALJ appears to be referring (through the ME) to the entire medical record in this case. Lastly, the ALJ highlighted that the record contained no mentions of the need for Plaintiff to elevate his legs as Dr. Giese had opined. As it would be impossible for the ALJ to cite to a negative mention that leg elevation was required, this is the only well-supported reason for the ALJ to have discounted Dr. Giese's opinions. Yet standing alone it is not enough.

Here, the Court does not believe the ALJ articulated "good reasons" for not giving controlling weight to Dr. Giese's opinions. Even if there were sound reasons for refusing to give this opinion controlling weight, the ALJ still erred by assigning it little weight without considering relevant regulatory factors under 20 C.F.R. § 404.1527(c) (*i.e.*, length, nature, and extent of treatment relationship; opinion's consistency with other evidence; explanatory support for the opinion; and any specialty of the treating physician). 20 C.F.R. § 404.1527(c); *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018); *see Kimberly L. W. v. Berryhill*, 2019 WL 354980, at *5 (N.D. Ill. Jan. 29, 2019) ("This Court takes the view that an explicit analysis of the checklist is required under the treating physician's rule."). Some of these factors may indeed *not* have supported giving controlling weight to Dr. Giese's opinions, as Plaintiff had what might fairly be characterized as a limited and sporadic treatment history with Dr. Giese. Nevertheless, there is no indication that the ALJ considered *any* of these required factors in assigning little weight to the opinions of Dr. Giese, either explicitly or implicitly. As such, the ALJ's decision is insufficient. Remand is required.

Additionally, the Court finds Plaintiff's argument concerning consultative examiner Dr. Aliaga's opinions compelling. The Court concurs with Plaintiff and indeed finds it unclear whether Dr. Aliaga's opinion was considered by the ALJ as there is no mention of Dr. Aliaga's opinion (exhibit 5F in the Administrative Record) in the ALJ's decision, either by citation or reference. Moreover, Dr. Aliaga found evidence of, *inter alia*, positive bilateral straight leg raises [R. 359], yet the ALJ erroneously stated there was no evidence of positive straight leg raising in the record [R. 26]. Therefore, the Court also remands this matter based on the inadequate discussion of Dr. Aliaga's opinions. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) (although a reviewer will not reweigh the evidence or substitute its judgment for that of the ALJ, a decision that "lacks adequate discussion of the issues will be remanded.").

10

## IV. CONCLUSION

The Court reverses and remands with instructions for the ALJ to provide good reasons, if any, to discount the Plaintiff's treating physicians' evidence and to address Dr. Aliaga's opinions. At this time, the Court offers no opinion as to the other alleged bases of error (including, but not limited to, the ALJ's evaluation of Plaintiff's subjective symptoms or the Appeals Council's rejection of Plaintiff's additional evidence) in the ALJ's opinion as raised by the Plaintiff in Docket No. 24-1.

Plaintiff's Motion for Summary Judgment [dkt. 24] is granted. The Commissioner's Motion for Summary Judgment [dkt. 27] is denied.

Entered: 3/24/2021

United States Magistrate Judge
Susan E. Cox

11